**TRENK ISABEL SIDDIQI
& SHAHDANIAN P.C.**
21 Main Street, Suite 251
Hackensack, New Jersey 07601
(973) 533-1000
Asaad K. Siddiqi, Esq. (041062001)
asiddiqi@tisslaw.com
Victoria K. Mastrofilippo, Esq. (472832024)
vmastrofilippo@tisslaw.com
*Attorneys for Plaintiff, Oneport Global Logistics LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ONEPORT GLOBAL LOGISTICS LLC, | **COMPLAINT** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | CIVIL ACTION NO. |
| AMERIGO LOGISTICS LLC; CAIN TRUCKING INC.; WORLDWIDE FLIGHT SERVICES; JOHN DOES 1-5 (fictitious names as true identities are unknown); and XYZ CORPORATION 1-5 (fictitious names as true identities are unknown), | |
| Defendants. | |

Plaintiff, Oneport Global Logistics LLC ("Plaintiff" or "Oneport"), by and through its attorneys Trenk, Isabel, Siddiqi & Shahdanian P.C., hereby files this Complaint against Defendants Amerigo Logistics LLC ("Amerigo"); Cain Trucking Inc. ("Cain Trucking"); Worldwide Flight Services ("WFS") (collectively "Defendants"), jointly and severally, and respectfully avers as follows:

1

## NATURE OF THE ACTION

1. This is an action for fraud, gross negligence, and breach of contract arising from Defendants' involvement in the theft of cargo valued at $378,759.59 and intentional false representations about its delivery.

2. Moreover, the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 (the "Carmack Amendment"), governs claims against **carriers** involved in interstate shipping for loss or damage during transportation.

3. Plaintiff's state law causes of action against the non-carrier Defendants are separate and distinct from any loss or damage to the freight shipment because the freight shipment was not "lost during transportation" but rather was stolen through a criminal scheme involving fraudulent impersonation, intentional false statements about delivery, and subsequent extortion demands for $10,000 ransom.

## PARTIES

4. Plaintiff, Oneport, is a business with its primary office location at 1 Meadowlands Plaza, Suite 200, East Rutherford, New Jersey 07073.

5. Plaintiff had a direct financial interest in the cargo as freight forwarder and was contractually obligated to deliver the cargo to its customer, Haddad Apparel Group ("Haddad"). Plaintiff has paid and/or is liable to pay the shipper and other upstream parties for the cargo value and associated costs, and has been subrogated to the rights of the shipper and consignee. Plaintiff is the real party in interest with standing to bring these claims.

6. Upon information and belief, Defendant, Amerigo, is a business located at 31 Acevedo Ave, San Francisco, CA 94132 that operates throughout the United States in several states, including in the State of New Jersey, offering freight broker services to customers.

7. Amerigo holds itself out as a professional freight broker and motor carrier arranging interstate transportation services. Amerigo operates under Motor Carrier Number ("MC #") 1493206 and DOT #3984937.

8. Upon information and belief, Defendant, Cain Trucking Inc. ("Cain Trucking"), is a business located at 6230 Sugar Creek Rd., Lafayette, IN 47905 that operates throughout the United States in several states, including in the State of New Jersey. Cain Trucking operates under MC # 271281.

9. Upon information and belief, Defendant, WFS, is a cargo handling company that provides ground handling services at JFK in New York, including cargo receipt, storage, and release services for air carriers such as Kenya Airways. WFS acts as a bailee for hire when it receives and stores cargo on behalf of air carriers and their customers.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs. Complete diversity of citizenship exists: Plaintiff Oneport is a citizen of New Jersey; Defendants Amerigo, Cain Trucking, and WFS are citizens of California, Indiana, and New York, respectively.

11. This Court has supplemental jurisdiction over Counts I-IV pursuant to 28 U.S.C. § 1367(a), as they share a common nucleus of operative fact with Count V.

12. Alternatively, Count V provides an independent basis for federal question jurisdiction under 28 U.S.C. § 1331.

13. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b) because all of the events and omissions giving rise to Plaintiff's claims occurred within New Jersey in the District of New Jersey, specifically:

      a.   The intended delivery destination of the cargo was in New Jersey;

      b.   Plaintiff maintains its principal place of business in Bergen County, New Jersey;

      c.   The injury to Plaintiff occurred in New Jersey; and

      d.   The fraudulent misrepresentations were received and relied upon by Plaintiff in New Jersey.

14. This action is being commenced within two years of the date of the occurrences herein.

## FACTS APPLICABLE TO ALL COUNTS

15.    In or around June of 2025, Oneport arranged for a shipment of goods, specifically clothing garments, from an exporter/manufacturer in Nairobi, Kenya to a customer, Haddad Apparel Group ("Haddad"), at 131 Docks Corner Road, Dayton, New Jersey 08810.

16.    The shipment was scheduled to arrive at JFK on or around June 11, 2025.

17.    The shipment consisted of 838 cartons weighing 10,578 kg, with an invoice value of $148,393.01. The cargo was transported via Kenya Airways under Master Air Waybill #706 5175 4382 and House Airway Bill #NB0600010165.

18.    On June 6, 2025, Oneport sought a delivery rate quote for the incoming freight shipment from Defendant Amerigo.

19.    All communications between Oneport and Amerigo regarding the delivery were made with Krystal Wilson ("Ms. Wilson"), who at all relevant times, was employed as a Freight Broker for Defendant, Amerigo.

20.    On that date, Ms. Wilson sent Oneport a delivery rate quote for the incoming freight shipment.

21.    On June 9, 2025, Ms. Wilson confirmed that a delivery driver was available to pick up the freight shipment.

22. The trucking company that Amerigo had arranged to deliver the freight shipment was Cain Trucking.

23. Thereafter, on that date, Oneport sent the delivery order with all required paperwork to pick up the freight shipment from JFK and deliver it to Haddad in Dayton, New Jersey.

24. Oneport's delivery order included a note that directed Amerigo to contact Haddad, through Daniela Salazar, before attempting delivery.

25. Oneport's delivery order also directed that Proof of Delivery ("POD") is required with the billing invoice and to send same via email after successful delivery.

26. The delivery order and supporting documents were provided to enable proper identification and verification of the authorized carrier and driver. The documents clearly identified the freight forwarder (Oneport), the carrier (Amerigo), and the delivery destination.

**WFS Negligent Cargo Release:**

27. Upon information and belief, on or about June 9, 2025, WFS released the cargo to an unknown individual claiming to represent Cain Trucking.

28. The freight shipment was in good condition at the time of release.

29. WFS released cargo valued at $378,759.59 without verifying:

   a. Driver's license or any photo identification;

   b. Authority of the individual to act on behalf of Cain Trucking;

   c. Comparison of driver information to the delivery order;

   d. Proper signature and documentation; or

   e. Any credentials whatsoever.

30. WFS's complete failure to conduct any verification before releasing nearly $400,000 in cargo constitutes gross negligence and willful misconduct.

**The False Delivery Confirmation:**

31. On June 10, 2025, at 2:53 a.m., Ms. Wilson confirmed via email to Oneport that the driver was in line to load the freight shipment.

32. That same day, at 2:53 a.m., Ms. Wilson confirmed via email to Oneport that Part A of the freight shipment was loaded and Part B would be loaded within two (2) hours.

33. That same day, at 5:09 a.m., Ms. Wilson confirmed via email to Oneport that the driver was loading Part B of the freight shipment.

34. That same day, at 6:57 p.m., Ms. Wilson confirmed via email to Oneport that all of freight shipment was picked up at the WFS facility and estimated that the delivery driver would arrive at the destination warehouse for Haddad to complete the delivery within fifteen (15) minutes.

35. These email confirmations from Ms. Wilson demonstrated that Amerigo was actively managing and tracking the shipment and was making specific representations about the driver's location and delivery progress.

36. On June 11, 2025, at 12:42 a.m., Ms. Wilson confirmed via email to Oneport that the freight shipment was successfully delivered and POD would be sent out shortly thereafter.

37. This statement was false. The freight shipment was never delivered to Haddad.

38. Ms. Wilson, on behalf of Amerigo, made this false statement either: (a) knowing it was false; or (b) without any basis to believe it was true and with reckless disregard for its truth.

39. Ms. Wilson's confirmation of successful delivery at 12:42 a.m., in the middle of the night, before Haddad's business hours, and before the scheduled delivery window of 7:30 a.m., to 3:30 PM, demonstrates she had no factual basis for the confirmation.

40. Despite promising to provide POD "shortly," Defendants never provided any POD because no delivery occurred.

41. When confronted about the missing POD and non-delivery, Defendants failed to correct their false statement or provide any explanation.

42. The false delivery confirmation enabled the cargo theft to go undetected for critical hours, preventing any chance of cargo recovery.

43. That same day, Oneport sought confirmation of the delivery from Haddad, after not receiving the POD from Amerigo.

44. That same day, at 10:33 a.m., Haddad notified Oneport that the freight shipment had not arrived at their warehouse.

45. Haddad's receiving clerk stated in an email: "I haven't yet received this delivery 70651754382." This definitively proved that Ms. Wilson's confirmation of successful delivery was false.

46. That same day, at 10:39 a.m., Oneport reminded Ms. Wilson that Amerigo's compliance team was required to confirm that the shipment was to be loaded on the correct truck by verifying the driver's license and identification before turning the shipment over.

47. In that email to Amerigo, Oneport also informed Ms. Wilson that Truck Stop had issued a warning about Cain Trucking due to suspicions of fraud.

48. Oneport's email alerting Amerigo to fraud warnings about Cain Trucking demonstrates that the risks associated with this carrier were or should have been known to Amerigo.

49. Oneport became aware that other companies have had a history of issues with Cain Trucking. Upon information and belief, a freight was stolen by this company within the same two-day period from Blackhill Logistics and C&Y Trading.

**The Extortion Scheme:**

50. Thereafter, Cain Trucking sent blackmail calls and emails demanding a payment of $10,000 for the return of the shipment. The phone number and email address used to communicate the demand were (989) 204-9321; operations.caintrucking@gmail.com and cain.trucking@hotmail.com.

51. The demand for $10,000 ransom proves that the cargo theft was intentional and criminal, not the result of any transportation error or negligence.

52. The use of Gmail and Hotmail email addresses, rather than a professional business domain, suggests a fraudulent operation using the Cain Trucking name.

53. Due to the blackmail calls and emails, Oneport determined that the freight shipment was not delivered as a result of fraud.

**Police Report and Investigation:**

54. On June 13, 2025, Oneport filed a police report with Port Authority of New York Police Department to document the report of stolen freight shipment. The police report stated that:

> On June 9, 2025, Our Overseas Agent office shipped commercial cargo from Nairobi, Kenya to JFK via Airline Kenya Airways under Air Waybill number Master AWB # 706 5175 4382 House Airway Bill # NB 060 0010 165. Upon arrival, we issued a Pick-up order to our trucker to pick up cargo, however we came to know from our trucker that this cargo was picked up by another fraudulent trucker and taken to an unknown location. / This cargo is for our ultimate importer The Haddad Apparel Group Limited, 131 Docks Corner Road, Dayton New Jersey 08810. Despite follow-up attempts with the airline's warehouse WFS, JFK Intl Building 66 Cargo Ara C Jamaica, Queens 11430. We are unable to trace this cargo. / This shipment remains missing as of the time of this report. I am filing

this report to officially document the loss and request further investigation.

55. On June 18, 2025, at 1:47 a.m., Oneport sent a formal claim letter, dated June 16, 2025, to Amerigo and WFS.

56. Oneport revised the aforementioned letter after receiving information from their client, Haddad, detailing their losses. Oneport sent the revised letter on June 30, 2025, at 7:10 p.m.

57. Despite these formal claim letters, neither Amerigo nor WFS has taken responsibility for the loss or offered compensation.

**Damages:**

58. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered the following damages:

    a. Direct Cargo Losses:

        i. Invoice Value of Goods............................................................. $148,393.01

        ii. Loss of Sale to Customer.......................................................... $185,450.00

    b. Freight and Customs Costs:

        i. Air Freight (10,578 kg x $4.00/kg)............................................ $42,312.00

        ii. Airline Fees at JFK.......................................................................... $495.44

        iii. Handling............................................................................................ $250.00

        iv. Custom Duty..................................................................................... $109.14

        v. Custom Entry.................................................................................... $200.00

        vi. Miscellaneous Expenses................................................................. $250.00

        vii. Delivery Cost............................................................................... $1,300.00

        viii. Tariff.................................................................................................... $TBA

    c. Total Damages:................................................................................ $378,759.59

59. Due to non-delivery, Haddad could not fulfill orders, resulting in lost sales of $185,450.00. These consequential damages were foreseeable because Defendants were informed the shipment contained seasonal clothing with time-sensitive delivery requirements.

60. Plaintiff additionally seeks:

    a. Pre-judgment interest from June 11, 2025;

    b. Statutory post-judgment interest;

    c. Attorney's fees and costs of suit;

    d. Punitive damages; and

    e. Such other relief as the Court deems just and equitable.

## COUNT I
## FRAUD
## (AGAINST DEFENDANT AMERIGO)

61. Plaintiff repeats all of the foregoing allegations as if fully set forth herein.

62. Defendant Amerigo is liable for fraud because it knowingly and falsely misrepresented that the freight shipment was successfully delivered to Oneport's customer, Haddad when it, in fact, had not been delivered.

63. This fraud claim is based on Amerigo's affirmative false statement about delivery, not on breach of contractual obligations. Amerigo's false confirmation of delivery was made to conceal its failure to properly monitor the shipment and constitutes an independent tort separate from any breach of contract.

64. Defendant Amerigo, through Ms. Wilson, made a material misrepresentation when she sent an email to Oneport confirming that the freight shipment was successfully delivered on June 11, 2025, at 12:42 a.m.

65. Ms. Wilson's email correspondence sent on behalf of Amerigo falsely stated that delivery was successful, but the freight shipment had not been delivered.

66. Defendant Amerigo knew the representation was false at the time it was made, as evidenced by the following facts:

   a. The confirmation was sent at 12:42 a.m., in the middle of the night, hours before Haddad's business hours (7:30 a.m. to 3:30 p.m.). It was impossible for any delivery to have occurred at this time, and Amerigo knew this because Oneport had specifically instructed Amerigo to contact Haddad during business hours before delivery.

   b. Amerigo had no Proof of Delivery ("POD") when Ms. Wilson sent the confirmation. No POD existed at 12:42 a.m. because no delivery had occurred.

   c. Amerigo had not received any communication from the driver confirming delivery to Haddad.

   d. Amerigo had not contacted Haddad to confirm receipt, despite specific instructions to do so.

   e. When confronted hours later about the false confirmation, Amerigo could not provide POD and offered no explanation, demonstrating Amerigo knew at the time of the confirmation that no delivery had occurred.

67. Alternatively, Amerigo made the false statement with reckless disregard for its truth. Amerigo confirmed delivery without any basis whatsoever, no POD, no driver confirmation, no Haddad contact, at a time when delivery was impossible. This demonstrates reckless indifference to the truth, satisfying the fraud standard.

68. Defendant Amerigo intended for Oneport to rely on the delivery confirmation.

69. Oneport reasonably relied on Defendant's statement that the freight shipment was successfully delivered.

70. Oneport initially believed the freight shipment was successfully delivered and was awaiting POD.

71. Oneport sought confirmation of delivery from Haddad, which confirmed that the freight shipment was never delivered.

72. Oneport suffered substantial damages in the amount of $378,759.59 as a result of Defendant's fraudulent actions.

73. Defendant's fraudulent conduct falls outside the scope of Carmack Amendment, which does not preempt state law fraud claims.

74. The false delivery confirmation was not mere negligence in performing transportation services, but rather an intentional false statement made to conceal cargo theft or gross negligence.

75. Defendants' fraud defeats any contractual or statutory limitation of liability that might otherwise apply.

76. Defendants' actions were willful, wanton, and malicious, demonstrating actual malice or reckless disregard for Plaintiff's rights, justifying an award of punitive damages pursuant to N.J.S.A. 2A:15-5.12.

**WHEREFORE**, Plaintiff, Oneport, demands judgment against Defendant Amerigo for damages, compensatory damages, both economic and non-economic, punitive damages, interest, costs of suit, attorney's fees and costs, and other such relief as the Court may deem just and equitable.

## COUNT II
### NEGLIGENT MISREPRESENTATION
### (AGAINST DEFENDANT AMERIGO)

77. Plaintiff repeats all of the foregoing allegations as if fully set forth herein.

78. In the alternative, if this Court finds that Defendant's conduct does not constitute fraud, Defendant is liable for negligent misrepresentation.

79. Defendant Amerigo is liable for negligent misrepresentation because it falsely stated that the freight shipment was successfully delivered to Haddad's warehouse when Amerigo and Ms. Wilson did not have confirmation of delivery.

80. Defendant Amerigo, through Ms. Wilson, made a material misrepresentation when she sent an email to Oneport confirming that the freight shipment was successfully delivered on June 11, 2025, at 12:42 a.m.

81. Ms. Wilson's email correspondence sent on behalf of Amerigo falsely stated that delivery was successful, but the freight shipment had not been delivered.

82. Amerigo negligently failed to verify that Oneport's cargo was loaded onto the correct truck.

83. Amerigo negligently failed to receive POD from Cain Trucking to confirm that the shipment was successfully delivered before making such a statement to Oneport.

84. Oneport reasonably relied on Ms. Wilson's statement that the freight shipment was successfully delivered.

85. Oneport initially believed the freight shipment was successfully delivered and was awaiting POD.

86. Oneport sought confirmation of delivery from Haddad, which confirmed that the freight shipment was never delivered.

87. Oneport suffered substantial damages in the amount of $378,759.59 as a result of Defendants' negligent misrepresentation.

**WHEREFORE**, Plaintiff, Oneport, demands judgment against Defendant Amerigo for damages, compensatory damages, both economic and non-economic, interest, costs of suit, attorney's fees and costs, and other such relief as the Court may deem just and equitable.

**COUNT III**
**BREACH OF CONTRACT**
**(AGAINST DEFENDANT AMERIGO)**

88. Plaintiff repeats all of the foregoing allegations as if fully set forth herein.

89. Defendant Amerigo entered into a contract with Oneport, formed through email exchanges between June 6-9, 2025, whereby Amerigo agreed to arrange for pickup and delivery of cargo from JFK to Dayton, NJ in exchange for payment of agreed freight charges.

90. The material terms of the contract included:

    a. Amerigo would arrange for a qualified carrier to pick up the cargo from WFS at JFK;

    b. Amerigo would verify driver credentials before cargo release;

    c. Amerigo would deliver cargo to Haddad at 131 Docks Corner Rd., Dayton, NJ;

    d. Amerigo would contact Haddad before delivery as instructed;

    e. Amerigo would provide POD after successful delivery; and

    f. Amerigo would ensure safe delivery of the cargo.

91. Defendant Amerigo breached its contract with Oneport by failing to deliver the freight shipment.

92. Amerigo materially breached the contract by:

    a. Failing to verify driver credentials before cargo release;

  b. Allowing cargo to be released to an unauthorized person;

  c. Failing to deliver cargo to Haddad;

  d. Failing to contact Haddad as instructed;

  e. Failing to provide POD; and

  f. Falsely representing that delivery was successful.

  93. Defendant Amerigo created an enforceable contract with Oneport when it agreed to facilitate shipping services in exchange for payment.

  94. Defendant Amerigo failed to perform successful delivery, as required by the agreement with Oneport.

  95. Oneport suffered substantial damages in the amount of $378,759.59 as a result of Defendant's breach.

  **WHEREFORE**, Plaintiff, Oneport, demands judgment against Defendant Amerigo for damages, compensatory damages, both economic and non-economic, interest, costs of suit, attorney's fees and costs, and other such relief as the Court may deem just and equitable.

**COUNT IV**
**GROSS NEGLIGENCE/BREACH OF BAILMENT**
**(AGAINST DEFENDANT WFS)**

  96. Plaintiff repeats all of the foregoing allegations as if fully set forth herein.

  97. WFS acted as bailee for hire when it received and stored the cargo at JFK Airport on behalf of Kenya Airways and the cargo's beneficial owners.

  98. As a bailee for hire, WFS owed a duty of reasonable care in safeguarding and releasing the cargo.

  99. A bailee's duties run not only to the bailor but also to the cargo owner and parties with a financial interest in the cargo.

100. Oneport, as freight forwarder with a contractual obligation to deliver cargo to a consignee and with subrogation rights to the shipper's claims, qualifies as a party with sufficient interest to enforce WFS's bailment duties.

101. Alternatively, WFS is liable under a negligence theory. WFS owed a duty to exercise reasonable care in releasing cargo, a duty that extended to all foreseeable parties who would be harmed by WFS's negligence, including Oneport.

102. WFS breached its duty by releasing cargo valued at $378,759.59 to an unknown individual without verifying:

    a. Driver's license or any photo identification;

    b. Authority of the individual to receive cargo on behalf of any party;

    c. Comparison of driver information to the delivery order;

    d. Proper signature and identification documentation; or

    e. Any credentials whatsoever.

103. WFS's complete and utter failure to conduct any verification before releasing nearly $400,000 in cargo was not ordinary negligence but rather gross negligence and willful misconduct.

104. WFS's conduct demonstrated a reckless disregard for the safety of the cargo and the rights of cargo owners.

105. The release of high-value cargo without any verification whatsoever is so far below the standard of care expected of professional cargo handlers that it constitutes willful misconduct.

106. WFS's willful misconduct defeats any limitation of liability provisions in its ground handling agreement, warehouse receipt, or any other contract.

107. WFS's conduct was a proximate cause of Plaintiff's damages.

108. WFS's willful misconduct justifies an award of punitive damages pursuant to N.J.S.A. 2A:15-5.12.

109. Additionally, even absent a bailment relationship, WFS owed a duty to exercise reasonable care on releasing cargo, a duty that extended to all foreseeable parties who would be harmed by WFS's negligence, including Oneport as the freight forwarder arranging the delivery. WFS's duty arose from its undertaking a safeguard and properly releasing cargo on behalf of air carriers and their customers.

110. WFS's liability does not depend on privity of contract with Oneport. First, as set forth above, bailees owe duties to beneficial owners of bailed property, not merely to their contractual counterparties. Second, WFS is liable under principles of negligence. WFS owed a duty to exercise reasonable care in releasing cargo, and this duty extended to all foreseeable parties who would be harmed by WFS's negligence. It was eminently foreseeable that WFS's release of cargo to unauthorized persons would harm the freight forwarder (Oneport) who arranged the delivery and bore financial responsibility for the cargo. Third, WFS's gross negligence in releasing nearly $400,000 in cargo without verification whatsoever constitutes willful misconduct that defeats any contractual limitations on liability or privity defenses.

**WHEREFORE**, Plaintiff, Oneport, demands judgment against WFS for compensatory damages in the amount of $378,759.59, punitive damages, pre-judgment and post-judgment interest, costs, attorney's fees, and such other relief as the Court deems just and equitable.

**COUNT V**
**CARMACK AMENDMENT, 49 U.S.C. § 14706**
**(AGAINST DEFENDANT CAIN TRUCKING)**

111. Plaintiff repeats all of the foregoing allegations as if fully set forth herein.

112. To the extent this Court finds that the Carmack Amendment applies to Defendant Cain Trucking's conduct, Plaintiff asserts the following claim under 49 U.S.C. § 14706.

113. Defendant Cain Trucking accepted the freight shipment at JFK for delivery to Haddad in Dayton, NJ.

114. The freight shipment was in good condition at the time of release to Cain Trucking.

115. Cain Trucking failed to deliver the freight shipment to Haddad.

116. Oneport suffered substantial damages in the amount of $378,759.59 as a result of Cain Trucking's failure to deliver the freight shipment.

117. Under the Carmack Amendment, Cain Trucking is strictly liable for this loss.

118. However, Cain Trucking's criminal conduct (theft and extortion) constitutes willful misconduct that defeats any Carmack liability limitations. The freight was not "lost during transportation" but rather stolen through a criminal scheme, including ransom demands.

**WHEREFORE**, Plaintiff, Oneport, demands judgment against Defendant Cain Trucking for $378,759.59, plus interest, costs of suit, attorney's fees and costs, and other such relief as the Court may deem just and equitable.

## COUNT VI
## CONVERSION (ALTERNATIVE)
## (AGAINST CAIN TRUCKING)

119. Plaintiff repeats all of the foregoing allegations as if fully set forth herein.

120. To the extent this Court finds that the Carmack Amendment does not apply to Defendant Cain Trucking's conduct, Plaintiff asserts that Cain Trucking committed conversion when it stole Oneport's shipment of goods and failed to deliver them to Haddad's warehouse.

121. In several email communications on June 10, 2025, Amerigo confirmed that Cain Trucking had successfully loaded the freight shipment onto their truck and was scheduled to deliver to Haddad's warehouse.

122. The freight shipment was never delivered to Haddad's warehouse.

123. Upon information and belief, Defendant Cain Trucking intentionally and unlawfully exercised dominion and control over Oneport's cargo.

124. Thereafter, Cain Trucking demanded a payment of $10,000 for the return of the freight shipment.

125. Cain Trucking's subsequent demand for $10,000 ransom demonstrates that the taking was intentional and criminal, not the result of mere negligence or mistake.

126. The freight shipment was worth $378,759.59 and was owned by or under the control of Oneport at the time of conversion.

127. Cain Trucking's demand for ransom constitutes extortion under N.J.S.A. 2C:20-5 and demonstrates the criminal nature of their conduct.

128. Cain Trucking has a history of fraudulent activity, as evidenced by the warning issued by Truck Stop due to suspicion of fraud.

129. Upon information and belief, Cain Trucking stole shipments from Blackhill Logistics and C&Y Trading during the same time period as the events and allegations contained herein.

130. The value of the shipment and all costs and fees associated with delivery of same totals $378,759.59.

131. Cain Trucking's willful and malicious conduct also justifies punitive damages, pursuant to N.J.S.A. 2A:15-5.12.

**WHEREFORE**, Plaintiff, Oneport, demands judgment against Defendant Cain Trucking for damages, compensatory damages, both economic and non-economic, punitive damages, interest, costs of suit, attorney's fees and costs, and other such relief as the Court may deem just and equitable.

## JURY DEMAND

Please take notice that demand is hereby made for a trial by jury as to all issues so triable.

## DESIGNATION OF TRIAL ATTORNEY

Please take notice that Asaad K. Siddiqi, Esq., of the firm Trenk Isabel Siddiqi & Shahdanian P.C., is hereby designated as trial counsel for this matter.

## CERTIFICATION

I certify that the above matter and controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and I have no knowledge that any other action or arbitration proceeding is contemplated. To the best of my knowledge, no non-party should be joined in this action.

**TRENK ISABEL SIDDIQI
& SHAHDANIAN P.C.**
*Attorneys for Plaintiff
Oneport Global Logistics LLC*

By: */s/ Asaad K. Siddiqi, Esq.*
    **ASAAD K. SIDDIQI, ESQ.**

Dated: December 12, 2025