NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ONEPORT GLOBAL LOGISTICS LLC,

*Plaintiff,*

v.

AMERIGO LOGISTICS LLC; CAIN
TRUCKING INC.; WORLDWIDE FLIGHT
SERVICES; JOHN DOES 1-5 (fictitious names
as true identities are unknown); and XYZ
CORPORATION 1-5 (fictitious names as true
identities are unknown),

*Defendants.*

Civil No.: 25-cv-18588 (KSH) (AME)

OPINION

**Katharine S. Hayden, U.S.D.J.**

I.      **Introduction**

This matter comes before the Court on the motion to dismiss (D.E. 18) brought by

defendant Amerigo Logistics LLC ("Amerigo"), which seeks to dispose of contract and tort

claims based on preemption by federal law.  For the reasons set forth below, Amerigo's motion

is granted in part and denied in part.

II.     **Background**

The following facts are taken from the complaint and are accepted as true for purposes of

this motion.  Plaintiff Oneport Global Logistics LLC ("Oneport") is a cargo freight forwarder,

meaning that it arranges for shipment of goods to customers.  (D.E. 1, Compl. ¶¶ 4-5.)  Amerigo

is a broker that provides transportation logistics services to companies like Oneport.  (*Id.* ¶¶ 6-9.)

In June 2025, Oneport arranged clothing garments to be shipped from a manufacturer in

Kenya to a customer, Haddad Apparel Group ("Haddad"), located in Dayton, New Jersey.  (*Id.*

1

¶ 15.)  The shipment was scheduled to arrive at JFK airport on or around June 11, 2025, and consisted of 838 cartons with an estimated value of $148,393.01.  (*Id.* ¶¶ 16-17.)  Prior to the shipment's arrival at JFK, Oneport requested a delivery rate quote from Amerigo.  (*Id.* ¶ 18.)

Krystal Wilson, an employee of Amerigo, sent Oneport a quote and confirmed that a driver was able to pick up the freight shipment when it arrived at JFK.  (*Id.* ¶¶ 20-21.)  In response, Oneport sent Amerigo an order requesting shipment to Haddad in New Jersey.  (*Id.* ¶ 23.)  The order provided certain conditions:  that Amerigo must contact Haddad through a representative before attempting delivery and that proof of delivery must be sent with the billing invoice and via email.  (*Id.* ¶¶ 24-25.)  Amerigo arranged for defendant Cain Trucking Inc. to deliver the shipment to Haddad.  (*Id.* ¶ 22.)

On June 10, 2025, Wilson emailed Oneport that the delivery driver from Cain Trucking was dispatched to pick up the freight shipment.  (*Id.* ¶ 31.)  Over the next few hours, Wilson updated Oneport that the driver was loading the cargo into the trucks.  (*Id.* ¶¶ 32-33.)  At 6:57 p.m., Wilson confirmed that the cargo was picked up at the facility owned by defendant Worldwide Flight Services ("WFS") and that the delivery driver would arrive at Haddad's warehouse within 15 minutes.  (*Id.* ¶ 34.)  The next email Oneport received from Wilson was at 12:42 a.m., confirming that the shipment was successfully delivered and that proof of delivery would be sent out shortly.  (*Id.* ¶ 36.)

But Amerigo never sent Oneport proof of delivery because the cargo never made it to Haddad.  (*Id.* ¶¶ 37, 40-44.)  Over the next few days, Cain Trucking allegedly "sent blackmail calls and emails" to Oneport "demanding a payment of $10,000 for the return of the shipment."  (*Id.* ¶ 50.)  On June 13, Oneport filed a police report with Port Authority of New York Police Department that the shipment was believed to be stolen by Cain Trucking or someone posing as

2

a trucker for Cain Trucking.  (*Id.* ¶ 54.)  Oneport characterizes Amerigo as perpetuating a fraud; that its employee Wilson made confirmation of the delivery either knowing it was false or with reckless disregard of its falsity based on when the delivery confirmation was issued and the lack of proof of delivery from Cain Trucking.  (*Id.* ¶¶ 31-39, *see* ¶ 63 ("Amerigo's false confirmation of delivery was made to conceal its failure to properly monitor the shipment and constitutes an independent tort separate from any breach of contract.").)

On June 18, Oneport sent a formal claim letter to Amerigo and WFS and sent a revised letter on June 30 that detailed the losses stemming from the shipment's disappearance.  (*Id.* ¶¶ 55-56.)  Oneport claims that its damages total $378,759.59, comprising direct cargo losses (value of goods and loss of sale to customers) and freight and customs costs.  (*Id.* ¶¶ 58-59.)  Neither Amerigo nor WFS has offered compensation for the shipment.  (*Id.* ¶ 57.)

On December 12, 2025, Oneport filed the instant complaint against Amerigo, Cain Trucking, and WFS.  (D.E. 1.)  The complaint alleges three counts against Amerigo:  fraud (Count One), negligent misrepresentation (Count Two), and breach of contract (Count Three).  (*Id.* ¶¶ 61-95.)  It alleges two counts against Cain Trucking:  a claim under the Carmack Amendment, 49 U.S.C. § 14706 (Count Five) and conversion (Count Six).  (*Id.* ¶¶ 111-131.)  Oneport's claim against WFS for gross negligence/breach of bailment (Count Four) was dismissed on January 27, 2026, when the parties stipulated to WFS's dismissal without prejudice.  (D.E. 13, 15.)  Cain Trucking answered the complaint.  (D.E. 16.)

On February 5, 2026, Amerigo filed the instant motion to dismiss, arguing that the express preemption provision in the Federal Aviation Administration Authorization Act of 1994

3

("FAAAA"), 49 U.S.C. § 14501(c), bars Oneport's claims against it. (D.E. 18.)[1] In the alternative, it argues that the economic loss doctrine bars Oneport's tort claims. (*Id.* at 21-22.) Oneport opposed, primarily arguing that "[t]he FAAAA preempts claims that would regulate broker services, not claims that provide remedies for a broker's intentional or reckless deception committed during the performance of those services." (D.E. 20, Opp., at 8.) In reply, Amerigo reiterates that "imposing state common law requirements on a freight broker when communicating with a shipper about the status of the shipment clearly relates to and effects [sic] the 'price, route, or services' that a freight broker provides"—the test for FAAAA preemption. (D.E. 21, Reply, at 3-4.)

Oneport sought leave to file a sur-reply, alleging that Amerigo's reply brief raises "new legal authority and arguments" not raised in its moving brief. (D.E. 22.) Amerigo did not oppose. For the sake of completeness, the Court grants Oneport's request and considers the sur-reply brief filed. L. Civ. R. 7.1(d)(6).

## III.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

---

[1] As the parties agree that Amerigo acted as a broker and not a carrier (*id.* at 11-12; D.E. 20, Opp., at 6-7), the Court will not address Amerigo's Carmack Amendment arguments. *See AMG Res. Corp. v. Wooster Motor Ways, Inc.*, 796 F. App'x 96, 99 (3d Cir. 2020) (noting that the Carmack Amendment provides a federal cause of action against motor carriers, not brokers).

4

That pleading standard does not require "detailed factual allegations," but requires the plaintiff to provide the "grounds" for its "entitle[ment] to relief." *Twombly*, 550 U.S. at 555.  Contentions that a plaintiff's claims are preempted by federal law, "directed to the face of the complaint, are appropriate for consideration under the standards for a Rule 12(b)(6) motion to dismiss." *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 591 (D.N.J. 2015) (McNulty, J.).

## IV.    Discussion

The FAAAA[2] contains express preemptive language, that "no State . . . shall enact or enforce" any law or provision having the effect of law "relating to . . . intrastate services of any freight forwarder or broker."  49 U.S.C. § 14501(b)(1).  Similarly, subsection (c) provides:  "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . , broker, or freight forwarder with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).

"The purpose of the FAAAA's preemption clause is to prohibit states from effectively re-regulating the trucking industry and to promote 'maximum reliance on competitive market forces.'"  *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 135 (3d Cir. 2018) (quoting 49 U.S.C. § 40101(a)(6)).  FAAAA preemption is interpreted broadly and occurs when a state law has "a connection with, or reference to . . . prices, routes, or services" of a motor carrier.  *Id.* at 133 (quoting *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014)); *see also Fahrenbach v. Green Planet Movers*, 682 F. Supp. 3d 109, 112 (D. Mass. 2023) ("The 'related to' test is an

---

[2] Congress passed the FAAAA in 1994, effective on January 1, 1995, which included the predecessor to § 14501(c)(1) (codified at 49 U.S.C. § 11501(h)(1)).  *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F. Supp. 665, 668 (N.D. Ga. 1997).  Then in December 1995, Congress enacted the Interstate Commerce Commission Termination Act ("ICCTA"), and § 11501(h)(1) was recodified as § 14501(c)(1).  *Id.* n.1 (citing Pub. L. No. 104-88, § 103, 109 Stat. 802, 899 (effective Jan. 1, 1996)).  As such, FAAAA preemption and ICCTA preemption are interpreted consistently.

intentionally expansive one and encompasses those state laws that have a connection to or reference to, either directly or indirectly, the rates, routes, and services of motor carriers and/or brokers.") (citing *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013)).  The Supreme Court has noted that "preemption occurs at least where state laws have a 'significant impact' related to Congress' deregulatory and pre-emption-related objectives." *Lupian*, 905 F.3d at 133 (quoting *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008)).

State common law qualifies as another provision "having the force and effect of law" for purposes of § 14501(c)(1). *Inter Metals Grp. v. Centrans Marine Shipping*, 2022 WL 489404, at *4 (D.N.J. Feb. 17, 2022) (Vazquez, J.) (citing *Alpine Fresh, Inc. v. Jala Trucking Corp.*, 181 F. Supp. 3d 250, 257 (D.N.J. 2016) (Hayden, J.)).  While routine breach of contract actions based on state law may be maintained under the FAAAA, *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995),[3] tort actions that would impact a broker's rates, routes, or services are preempted.  *See, e.g.*, *Inter Metals*, 2022 WL 489404, at *1, *4 (finding that plaintiff's claims that a broker acted negligently and fraudulently when an empty cargo container was delivered to it were preempted); *Alpine Fresh*, 181 F. Supp. 3d at 257 (finding that plaintiff's "common law claims of negligence and breach of bailment . . . are related to the intrastate transportation of goods, and more specifically to [defendant's] 'intrastate services' as a broker" and were preempted); *Marx Cos., LLC v. W. Trans Logistics, Inc.*, 2015 WL 260914, at *4 (D.N.J. Jan. 20, 2015) (Pisano, J.) (finding that negligence claims relating to the services of a broker were

---

[3]  Although *Wolens* was decided in the context of the Airline Deregulation Act ("ADA"), the FAAAA's preemptive language is based on, and its scope is interpreted in accordance with, the ADA.  *Rowe*, 552 U.S. at 370-77; *Mrs. Ressler's Food Prods. v. KZY Logistics, LLC*, 2017 WL 3868703, at *2 (D.N.J. Sept. 5, 2017) (Martini, J.) (Because the preemption provisions in the FAAAA and the ICCTA borrow language from the ADA, "the Supreme Court has interpreted the preemptive scope of the ICCTA and FAAAA in accordance with that of the ADA.").

preempted); *Yellow Transp., Inc. v. DM Transp. Mgmt. Servs. Inc.*, 2006 WL 2871745, at *3 (E.D. Pa. July 14, 2006) (finding "that the factual predicate of plaintiff's misrepresentation, unjust enrichment, *quantum meruit*, and fraud claims expressly concern, or, at the very least, have a connection with, the rates plaintiff was charging" and were preempted); *Deerskin*, 972 F. Supp. at 672 (dismissing as preempted state law claims brought against shipper of interstate goods alleging, *inter alia*, common law fraud, statutory fraud, and negligence).

Counts One and Two of the complaint assert fraud and negligence claims against Amerigo in that it "knowingly and falsely misrepresented that the freight shipment was successfully delivered to Oneport's customer, Haddad," or made this representation with "reckless disregard for its truth"; "negligently failed to verify that Oneport's cargo was loaded onto the correct truck"; and "negligently failed to receive [proof of delivery] from Cain Trucking to confirm that the shipment was successfully delivered before making such a statement to Oneport." (D.E. 1, Compl. ¶¶ 62, 66-67, 79-83.) As to its fraud claim, Oneport further alleges that "Amerigo's false confirmation of delivery was made to conceal its failure to properly monitor the shipment." (*Id.* ¶ 63.)

As a broker, Amerigo's services include "selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2) (defining "broker"). Courts have found that where a tort claim seeks to regulate a broker's oversight of its carrier, the broker's services would be impacted by state common law and the claim would be preempted. *Inter Metals*, 2022 WL 489404, at *1, *3-4 (plaintiff's claims preempted where the broker was alleged to have fraudulently and negligently coordinated delivery of an empty container); *Marx*, 2015 WL 260914, at *2-4 (plaintiff's claims preempted where the broker was alleged to be negligent in selecting a carrier who ultimately stole the goods); *cf. Yellow*, 2006 WL 2871745, at

*1-3 (plaintiff's claims preempted where the broker was alleged to have participated in a fraud scheme to receive discounted freight rates, as these claims "expressly concern, or, at the very least, have a connection with, the rates plaintiff was charging, however unwittingly, to its customers").

Despite Oneport's arguments, the Court is hard pressed to find that its tort claims are not connected to Amerigo's broker services and would not impact these services upon a finding of liability.  A plain reading of the complaint reveals that Oneport is challenging Amerigo's oversight and monitoring of Cain Trucking during its delivery (or non-delivery) of the cargo, which led to an alleged theft by Cain Trucking.  Providing and arranging for transportation of cargo, and the delivery of that cargo, are essential parts of a broker's services and Amerigo's communications and updates about delivery took place while it was acting as a broker.

Indeed, Amerigo contends as a practical matter that imposing liability against brokers on these facts would "require brokers to engage in additional vetting and investigations, more directly control carriers, contemplate the effect the time of day may have on their exposure when communicating, and incur more expense to verify the accuracy of the information supplied by a carrier before transmitting the same to the shipper." (D.E. 18, Motion, at 18.)  Imposing additional state law standards—"which may vary from state to state"—on brokers performing intrastate transportation services "is exactly th[e] type of variance which Congress seeks to preclude by means of . . . preemption." *Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc.*, 284 F. Supp. 2d 284, 288 (D. Md. 2003) (finding claims for misrepresentation, negligent misrepresentation, and unjust enrichment preempted under the FAAAA).

Further, courts have found that where a tort claim seeks to "enlarge or enhance the bargain" found in the parties' contract, it is preempted.  *Id.* ("[T]his Court may enforce the

bargain of the parties, by permitting the breach of contract action, but may not enlarge or enhance the bargain, *vis a vis* a tort action."); *see also Yellow*, 2006 WL 2871745, at *3 (finding plaintiff's "tort and quasi-contract claims implicate state interests external to the contractual relationship between the parties, thus constituting a state enforcement action 'related to' plaintiff's 'price'"). And here, Oneport specifically argues that Amerigo failed to "properly monitor the shipment" and failed to "verify that Oneport's cargo was loaded onto the correct truck." (D.E. 1, Compl. ¶¶ 63, 82.) While terms relating to Amerigo's monitoring and verification duties could have been agreed to in the parties' contract, they cannot now be raised as independent tort claims. Oneport's fraud and negligent misrepresentation claims raise "state-imposed obligations external to a contract" and impermissibly expand Amerigo's contractual duties.

Finally, as to Counts One and Two, the Court notes that on May 14, 2026, the Supreme Court decided *Montgomery v. Caribe Transp. II, LLC*, 608 U.S. ___, 146 S. Ct. 1199 (2026). While that decision was pending, Oneport argued that *Montgomery* may potentially impact its tort claims and cautioned the Court from dismissing them with prejudice. (D.E. 20, Opp., at 2-3.) Amerigo responded that the *Montgomery* decision would have no impact on Oneport's tort claims, since Oneport does not assert a negligent hiring claim and likewise does not argue that the safety exception contained in § 14501(c)(2)(A) applies to save its tort claims from preemption. (D.E. 21, Reply, at 4-5.) Now with the benefit of the *Montgomery* decision, the Court agrees with Amerigo.

*Montgomery* concerns the applicability of the FAAAA's safety exception, which provides that the preemption provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 146 S. Ct. at 1203 (quoting 49 U.S.C. § 14501(c)(2)(A)).

9

There, Shawn Montgomery alleged that a broker "failed to exercise reasonable care when it hired Caribe Transport, which had a subpar safety rating from federal regulators, to transport goods via truck," leading to a tractor-trailer accident that ultimately resulted in the amputation of Montgomery's leg. *Id.* at 1203-05. Before *Montgomery*, circuits were split as to whether negligent hiring claims against brokers were preempted under the FAAAA or whether they were saved from preemption by the safety exception. *Id.* at 1204 n.1.

The Supreme Court considered this circuit split and held that Montgomery's negligent hiring claim fell within the FAAAA's safety exception and was saved from preemption. *Id.* at 1204-05. The Court clarified that its holding did not "swallow the FAAAA's express preemption provision whole," as "[t]he safety exception saves only a subset of preempted claims: those involving regulations concerning motor vehicle safety." *Id.* at 1205. It went on to clarify that "state laws that are related to motor carrier prices, routes, and services . . . that have no relationship to safety" are not saved from preemption. *Id.* But Montgomery's claim—"the negligent hiring of an unsafe motor carrier whose truck caused injury"—is "an exercise of 'the safety regulatory authority of a State with respect to motor vehicles'" and is saved from preemption by the safety exception. *Id.* at 1206-07. Here, as discussed, there is no negligent hiring claim or safety exception argument, and the complaint does not raise facts that would support either.

Based on the foregoing, the Court finds that Oneport's fraud and negligent misrepresentation claims are directly related to Amerigo's "services" as a broker. 49 U.S.C. § 14501(c)(1). Accordingly, the motion to dismiss Counts One and Two on grounds of preemption is granted.

However, Oneport's breach of contract claim at Count Three is different.  As discussed, a breach of contract claim is not preempted by the FAAAA so long as the claim is limited "to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Wolens*, 513 U.S. at 233.  The Supreme Court has distinguished common law claims from breach of contract claims for purposes of FAAAA preemption, stating that "privately ordered obligations" that are agreed to in a contract "do not amount to a State's enactment or enforcement of any law, rule, regulation, standard, or other provision having the force and effect of law." *Id.* at 228-29 (citation modified).

The complaint alleges that Oneport and Amerigo's email exchanges from June 6 through 9, 2025 formed a contract containing certain material terms that specified how the cargo would be picked up and how delivery would be made.  (D.E. 1, Compl. ¶¶ 89-90.)  Oneport alleges that Amerigo breached express terms found in the contract, including "[f]ailing to deliver [the] cargo to Haddad," and that it suffered damages as a result.  (*Id.* ¶¶ 90-94.)

Amerigo argues that this claim should be dismissed because it includes the implied covenant of good faith and fair dealing and implies damages that are not outlined in the parties' contract.  (D.E. 18, Motion, at 20-21; D.E. 21, Reply, at 9-10.)  In support, it relies on an out of district case, *Custom Stud, Inc. v. Meadow Lark Agency, Inc.*, 566 F. Supp. 3d 950 (D. Minn. 2021), where the plaintiff expressly alleged claims for breach of contract *and* breach of the implied covenant of good faith and fair dealing—a common law obligation read into contracts. There, the court "decline[d] to unravel" the breach of contract claim, which would not have been preempted, and the breach of good faith and fair dealing claim, which would have been preempted as external to the parties' bargain, and dismissed the matter without prejudice so that plaintiff "may attempt to clarify." *Id.* at 956.

11

But nowhere in the complaint does Oneport allege any breach of implied covenants. Rather, Oneport bases Amerigo's breach of contract on its failure to deliver on certain material terms that were included in the parties' contract.  There is no separate breach of contract claim to unravel from any implied covenant claim, and Count Three is not preempted by the FAAAA.

**V.      Conclusion**

For the foregoing reasons, the Court Amerigo's motion to dismiss is granted as to Counts One and Two and denied as to Count Three.  An appropriate order accompanies this opinion.


Dated: June 16, 2026                                                  */s/ Katharine S. Hayden*
                                                                              Katharine S. Hayden, U.S.D.J.